# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| ROBIN ANNIS, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | CAUSE NO. 1:16-cv-00113-SLC |
| COMMISSIONER OF SOCIAL SECURITY, | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Plaintiff Robin Annis appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application under the Social Security Act (the "Act") for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").[1] (*See* DE 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

On December 6, 2007, Annis filed an application for DIB and an application for SSI, alleging disability as of August 31, 2007. (DE 10 Administrative Record ("AR") 276-90). Annis was last insured for DIB on December 31, 2010 (AR 17), and therefore, she must establish that she was disabled as of that date. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that with respect to a DIB claim, a claimant must establish that she was disabled as of her date last insured in order to recover DIB). Both of Annis's applications were denied. (AR 153-60). At Annis's request, a hearing was held before an Administrative Law

---

[1] All parties have consented to the Magistrate Judge. (DE 15); *see* 28 U.S.C. § 636(c).

Judge on January 23, 2013. (AR 71-115). The Administrative Law Judge issued a partially favorable decision, finding that Annis was disabled as of April 1, 2012, for purposes of SSI, but was not disabled for purposes of DIB. (AR 122-40). Annis requested that the Appeals Council review the Administrative Law Judge's decision, and the Appeals Council affirmed that Annis was disabled for SSI beginning April 1, 2012, but remanded the decision to consider whether Annis was disabled before April 1, 2012, for purposes of SSI, and whether she qualified for DIB. (AR 149-52).

A second hearing was held before Administrative Law Judge Maryann Bright (the "ALJ"), on October 28, 2014. (AR 45-70). At the hearing, Annis, who was represented by counsel; Michael O'Brien, Annis's boyfriend; and vocational expert Marie Kieffer (the "VE") testified. (AR 46). On December 12, 2014, the ALJ issued an unfavorable decision, finding that Annis was not disabled before April 1, 2012, for purposes of SSI, and that Annis was not disabled for purposes of DIB. (AR 14-35). Annis requested that the Appeals Council review the ALJ's decision (AR 10-13), and the Appeals Council denied her request, making the ALJ's decision the final, appealable decision of the Commissioner (AR 1-9); *see* 20 C.F.R. §§ 404.981, 416.1481.

Annis filed a complaint with this Court on March 31, 2016, seeking relief from the Commissioner's final decision. (DE 1). In her appeal, Annis alleges that the ALJ erred by: (1) failing to incorporate her moderate difficulties in maintaining concentration, persistence, or pace in the hypothetical to the VE; (2) failing to incorporate the conclusions of Dan L. Boen, Ph.D., HSPP, into the residual functional capacity ("RFC") determination; and (3) improperly discrediting her testimony and the testimony of Mr. O'Brien. (DE 19 at 7-13).

## II. THE ALJ's FINDINGS

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

In determining whether Annis is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required her to consider the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals one of the Commissioner's listings, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[2] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id*. The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Id*. at

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

3

885-86.

At step one, the ALJ found that Annis had not engaged in substantial gainful activity since her alleged onset date of August 31, 2007. (AR 20). At step two, the ALJ found that Annis had the following severe impairments: alcohol abuse; seizure activity; and chronic obstructive pulmonary disease. (AR 20-21).

At step three, the ALJ concluded that Annis did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 21-24). Before proceeding to step four, the ALJ determined that Annis's symptom testimony was "not entirely credible" and assigned her the following RFC:

> [T]he claimant has the [RFC] to perform less than the full range of medium work . . . . The claimant could not climb ladders, ropes, or scaffolds and was limited to occasional climbing of ramps and stairs, balancing, stooping, crouching, kneeling and crawling. Otherwise she could lift/carry and push/pull twenty-five pounds frequently and fifty pounds occasionally and sit or stand/walk for approximately six hours each during an eight-hour workday with normal breaks. With respect to her work environment, the claimant needed to avoid concentrated exposure to extreme cold, extreme heat, pulmonary irritants such as fumes, forklifts, trucks, and automobiles or work with close proximity to hazards including unprotected heights and open and dangerous machinery, open flames, and sharp objects such as knives. The claimant could not perform complex or detailed tasks, but retained the mental residual functional capacity to perform simple, routine, and repetitive tasks consistent with unskilled work and could sustain and attend to tasks throughout the eight-hour workday.

(AR 24). Based on this RFC and the testimony of the VE, the ALJ found at step four that Annis could perform her past relevant work as a production assembler. (AR 34). Therefore, the ALJ denied Annis's application for SSI prior to April 1, 2012, and denied her application for DIB. (AR 35).

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id*. Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Id*. Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id*.

### IV. ANALYSIS

#### A. *The ALJ's Hypothetical to the VE*

Annis's first argument is that the ALJ failed to account for her mental limitations in the hypotheticals posed to the VE at step five. Specifically, Annis argues that the ALJ erred by failing to incorporate her step-three finding that Annis had moderate deficits in maintaining concentration, persistence, or pace.

At steps two and three of the sequential evaluation, the ALJ determines the severity of a claimant's mental impairment by assessing her degree of functional limitation in categories

5

identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Relevant to this appeal, the "paragraph B" criteria consist of four "broad functional areas": activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(1)(3); *see, e.g.*, *Jones v. Massanari*, No. 01-C-0024-C, 2001 WL 34382025, at *13 (W.D. Wis. Oct. 18, 2001).

By way of a brief summary, when assessing the "paragraph B" criteria at steps two and three, the ALJ concluded that Annis had moderate difficulties in maintaining concentration, persistence, or pace, as well as mild restrictions in activities of daily living and in maintaining social functioning. (AR 23). However, the ALJ also concluded that these limitations did not prevent Annis from performing unskilled work, and stated that she would give a more detailed account of Annis's mental limitations in the RFC. (AR 23).

Subsequently, the ALJ assigned Annis the following mental RFC, in relevant part: "[Annis] could not perform complex or detailed tasks, but retained the mental residual functional capacity to perform simple, routine, and repetitive tasks consistent with unskilled work and could sustain and attend to tasks throughout the eight-hour workday." (AR 24). The ALJ's hypothetical to the VE included the following relevant exchange:

> Q. Ok. And what if the individual were unable to engage in complex or detailed tasks but can perform simple, routine and repetitive tasks consistent with unskilled work and is able to sustain [and attend to] task[s][3] throughout the eight-hour workday; would that preclude the past work of production assembler?
>
> A. No. It's an unskilled job.

---

[3] The original transcript reads, "sustain an intense task throughout an eight-hour workday" (AR 67), but the parties have agreed that the ALJ's reference to an "intense task" was likely a transcription error for the similar-sounding "attend to tasks." (DE 22 at 5 n.2; DE 25 at 3 n.2).

(AR 67). Annis argues that the ALJ's hypothetical to the VE failed to incorporate the moderate difficulties in maintaining concentration, persistence, or pace that the ALJ discussed at step three because the hypothetical only limited Annis to "simple, repetitive tasks" or "unskilled work."

The Seventh Circuit Court of Appeals has instructed that "for most cases, the ALJ should refer expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010). This is because, in most cases, "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *Id*. at 620 (finding that a restriction to repetitive tasks with simple instructions did not necessarily account for the claimant's depression-related problems in concentration, persistence, and pace) (collecting cases); *see also Warren v. Colvin*, 565 F. App'x 540, 544 (7th Cir. 2014) (finding that a limitation to "simple, repetitive tasks" did not adequately account for the claimant's concentration problems arising from depression and borderline intellectual functioning); *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (concluding that a limitation to unskilled work did not sufficiently account for the claimant's concentration problems stemming from depression and a psychotic disorder). Having said that, the Seventh Circuit has not insisted "on a per se requirement that this specific terminology ('concentration, persistence and pace') be used in the hypothetical in all cases." *O'Connor-Spinner*, 627 F.3d at 619.

"Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job

7

as difficult as an objectively more demanding job." SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985). Accordingly, the RFC and hypotheticals "must account for both the complexity of the tasks and the claimant's ability to stick with a task over a sustained period." *Warren*, 565 F. App'x at 544 (emphasis added) (citations omitted); *see Yurt*, 758 F.3d at 858 (articulating that an RFC for unskilled work "by itself does not provide any information about [the claimant's] mental condition or abilities").

Here, in addressing complexity in the hypothetical to the VE, the ALJ stated that Annis was "unable to engage in complex or detailed tasks," and could only perform "simple, routine and repetitive tasks consistent with unskilled work . . . ." (AR 67). This characterization of Annis's ability is consistent with the RFC. (AR 24). Similarly, in describing Annis's ability to stick with a given task over a sustained period, the ALJ stated that Annis "could sustain [and attend to] task[s] throughout the eight-hour workday" (AR 67), which corresponds to the assigned RFC (AR 24). Thus, the ALJ did not run afoul of the Seventh Circuit's instruction in *O'Connor-Spinner* to address both the complexity of the tasks the claimant can perform and the claimant's ability to stick with the tasks over a sustained period. 627 F.3d at 620.

Furthermore, the ALJ supported her assessment of Annis's ability to maintain concentration, persistence, or pace with evidence of record. For example, the ALJ cited a report from Cameron Memorial Community Hospital dated February 18, 2011, in which an examination showed normal cerebellar functioning. (AR 28 (referencing AR 546)). The ALJ also considered the February 2012 report of state agency psychologist Ken Lovko, Ph.D., who opined that Annis could not perform complex work tasks but could perform simple repetitive tasks, and could attend to tasks for a sufficient period to complete them. (AR 29 (referencing AR 563-67)). This report was confirmed by state agency psychologist Joelle Larsen, Ph.D., in

8

March 2012. (AR 29, 585). Dr. Vijay Kamineni performed a consultative exam in April 2012 and found normal speech patterns, orientation times three, intact recent and remote memory, normal attention span, and that Annis was cooperative and well groomed. (AR 29, 587).

Moreover, with the exception of testimony offered at the administrative hearing and Dr. Boen's opinion, which will be discussed *infra*, Annis fails to identify evidence supporting her assertion that her difficulties in maintaining concentration, persistence, or pace are more severe than those espoused by the ALJ. "It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)); *see Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." (citation omitted)).

Therefore, the ALJ adequately accounted for Annis's mental limitations in the RFC and in the hypotheticals posed to the VE at step five. *See O'Connor-Spinner*, 627 F.3d at 620-21.

### B. Dr. Boen's Report

Annis's next argument is that the ALJ improperly ignored findings in Dr. Boen's report in crafting the RFC and reached her own medical conclusions regarding Annis's limitations.

To summarize, Dr. Boen examined Annis for the first and only time on February 15, 2012. (AR 588). Dr. Boen assessed Annis's ability to think abstractly, understand comparisons, memorize, perform simple calculations, judge situations, and recall basic vocabulary words. (AR 559-60). Notably, during the memorization assessment, Annis was able to recall three out of three objects immediately, but she could only recall one out of three objects after five minutes. (AR 560). Annis struggled with understanding some abstract proverbs, but otherwise the

9

assessments did not show any deficiencies in mental functioning. (AR 559-60). The report includes a self-reported recitation of Annis's medical history, including that she had symptoms of anxiety and panic attacks. (AR 558). Dr. Boen assigned Annis a Global Assessment of Functioning ("GAF") score of 55,[4] and opined that she "could understand what was asked of her on the job but would not be able to remember it. She would not be able to concentrate and stay on task." (AR 561).

While the ALJ assigned great weight to Dr. Boen's GAF score, she did not find Dr. Boen's assessment regarding Annis's ability to stay on task or concentrate on the job to be credible. (AR 28-30). The ALJ also noted that other internal inconsistencies called "into question Dr. Boen's assessment of [Annis's] abilities to perform work-related tasks." (AR 29).

It is the province of the ALJ to craft the RFC and to resolve conflicts in evidence when doing so. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "The administrative law judge is not required or indeed permitted to accept medical evidence if it is refuted by other evidence . . . ." *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009) (citing *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995)). In doing so, the ALJ must "evaluate every medical opinion [she] receive[s]." 20 C.F.R. §§ 404.1527(c), 416.927(c). Whether the doctor examined the claimant is one of the factors considered when weighing opinions under this regulation. *Payne v. Colvin*, No. 4:15-CV-43-JVB-PRC, 2017 WL 655863, at *2 (N.D. Ind. Feb. 17, 2107) (citing 20 C.F.R. §

---

[4] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed., Text Rev. 2000). A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g.. few friends, conflicts with peers or co-workers). *Id*. "The American Psychiatric Association no longer uses the GAF as a metric." *Spencer v. Colvin*, No. 13-cv-1487, 2015 WL 684545, at *17 n.5 (C.D. Ill. Feb. 17, 2015) (citing Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013)). However, various medical providers of record used GAF scores in assessing Annis, so the GAF is relevant to the ALJ's decision. *See id*. (citing *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)).

404.1527(c)(1)).

Annis's first argument is that the ALJ erroneously faulted Dr. Boen for relying on Annis's self-reported history of panic attacks in concluding that she could not concentrate or stay on task. Annis's argument ignores that the ALJ mentioned a number of other reasons why Dr. Boen's conclusion was unreliable. For example, Dr. Boen reported that Annis presented with a normal mood and affect, she was not receiving any treatment for mental difficulties, and she reported not having any mental or emotional problems that interfered with her ability to work. (AR 28, 559-60). The ALJ specifically identified these factors in discrediting Dr. Boen's conclusion. The ALJ also emphasized the inconsistency between Dr. Boen's conclusion that Annis could not concentrate or stay on task *at all*, and a GAF score of 55, which indicates only *moderate* difficulties in maintaining concentration or staying on task. (AR 29, 560).

Furthermore, the ALJ observed that the limitations associated with Dr. Boen's GAF score were more consistent with the conclusions of Dr. Lovko, who reviewed Dr. Boen's report, that Annis had moderate limitations in carrying out complex instructions and in maintaining attention and concentration for extended periods of time. (AR 29, 564). Similarly, the ALJ found Dr. Boen's GAF score consistent with Dr. Kamineni's report of April 4, 2012, which noted that Annis's recent and remote memories were intact, her attention span was normal, and that she had normal concentration. (AR 29).

It is well established that a medical source opinion may be credited or discredited based on whether it is internally consistent or consistent with other evidence of record. *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) ("The ALJ also properly discounted Dr. Cusack's opinion due to lack of consistency." (citing 20 C.F.R. § 404.1527(c)(4))); *Clifford*, 227 F.3d at 871 (explaining that medical evidence may be discounted if it is internally inconsistent);

11

*Hampton v. Berryhill*, No. 2:17-CV-62-PRC, 2018 WL 1101985, at *6 (N.D. Ind. Mar. 1, 2018) ("[T]he more consistent an opinion is with the record as a whole, the more weight [is given] to that opinion." (second alteration in original) (citation and internal quotation marks omitted)). Because Dr. Boen's conclusion that Annis could not concentrate or stay on task at all is inconsistent with observations in his report, the GAF score he assigned, and other evidence of record, the ALJ did not err in assigning the conclusion little weight. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (observing that in assigning an RFC, "an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians" (citation omitted)).

Turning to Annis's next argument, she contends that Dr. Boen's opinion should be given more weight than the opinions of the state agency physicians because they did not examine her, whereas Dr. Boen did. Generally, the ALJ should "give more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not . . . ." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). However, as discussed *supra*, the ALJ provided other reasons for discrediting Dr. Boen's conclusions, while crediting the GAF score that he assigned. (AR 29, 558-60). Then, the ALJ assigned great weight to Dr. Lovko's report to the extent that it was consistent with Dr. Boen's GAF score. (AR 29-30). Thus, the ALJ provided sufficient reasoning, citing evidence of record supporting her conclusion that the limitations assigned by Dr. Lovko were entitled to greater weight than the limitations in Dr. Boen's conclusions. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (stating that the ALJ must sufficiently articulate his assessment of the evidence to assure the court that he considered the important evidence and to enable the court to trace the path of his reasoning).

Annis also contends that the ALJ impermissibly played doctor with regard to assessing

12

Dr. Boen's diagnosis of alcohol dependence. "When an ALJ denies benefits, he must build an accurate and logical bridge from the evidence to his conclusion, and he may not 'play doctor' by using his own lay opinions to fill evidentiary gaps in the record." *Chase v. Astrue*, 458 F. App'x 553, 556-57 (7th Cir. 2012) (citations and internal quotation marks omitted). Here, the ALJ stated: "[Dr. Boen's] diagnosis of alcohol dependence with physiological dependence is also revealing in that one would expect the claimant to function at a higher level in the absence of this diagnosis." (AR 28). Annis contends that this statement constitutes error because no medical source of record opined as to how alcoholism affected her ability to function.

However, the ALJ did not assign any limitation based on the expectation of how Annis would function absent a diagnosis of alcoholism. *See, e.g.*, *Chase*, 458 F. App'x at 557 (remanding where the ALJ determined that the claimant could perform sedentary work by lifting his foot 15 to 20 degrees, whereas the claimant's treating physician had opined that the claimant needed his foot elevated to 90 degrees); *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009) ("The ALJ impermissibly 'played doctor' and reached his own independent medical conclusion when he determined that [t]he level of treatment received also fails to infer limitations beyond the limitations described above in this decision. The claimant does not even take insulin." (alteration in original) (internal quotation marks and citations omitted)). Rather, the ALJ merely mentioned the expectation as one of many reasons why "Dr. Boen's assessment of [Annis's] abilities to perform work related tasks" may not have been credible. (AR 29-30). Furthermore, as already discussed, the ALJ provided ample reasons as to why Dr. Boen's conclusion regarding Annis's ability to work was not credible. *See Schramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000) (explaining that a harmless does not ultimately impact the outcome of the determination).

Finally, Annis contends that the ALJ erred by not mentioning the report of Candace L.

Martin, Psy.D., HSPP, dated February 7, 2013 (*see* AR 622-29), because it corroborates Dr. Boen's report. Dr. Martin observed that Annis's recognition memory skills, visual memory skills, and auditory memory skills were considerably worse after she had a stroke in April 2012, although Dr. Martin could not confirm the stroke as the cause. (AR 626). Dr. Martin also repeated Annis's self-reported difficulties with understanding material taught in school when she was much younger, which were "suggestive of probable lower intellectual functioning." (AR 626). Annis asserts that these findings lend credibility to Dr. Boen's findings that she could not stay on task or concentrate on the job.

However, Dr. Martin's report does not rise to the level of a separate line of evidence. *See Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("[A]n ALJ need not discuss every piece of evidence in the record, [but] the ALJ may not ignore an entire line of evidence that is contrary to the ruling." (citations omitted)). Dr. Martin reported that Annis's deficits in mental functioning were "considerably" less severe prior to her stroke in April 2012 (Annis alleges that she was disabled for purposes of SSI on April 1, 2012, and that she was disabled for purposes of DIB on December 31, 2010). Thus, Dr. Martin's assessment of Annis's memory deficits are outside of the relevant time period.

Furthermore, Annis's self-reports serve as the entire basis of Dr. Martin's finding of "probable lower intellectual functioning" (AR 626), which Annis contradicted in her self-report to Dr. Boen that she never had any mental problems that interfered with her ability to work (AR 559-60); *see Busking v. Colvin*, No. 11 C 1598, 2013 WL 4401380, at *18 (N.D. Ill. Aug. 14, 2013) (holding that an ALJ must discuss evidence that is both "relevant and uncontradicted"). Therefore, Dr. Martin's report is not "an entire line of evidence contrary to the ruling" as it does not corroborate Dr. Boen's report. *Busking*, 2013 WL 440138, *18 (citation and internal

14

quotation marks omitted). Moreover, as discussed *supra*, the ALJ provided ample reasoning in rejecting Dr. Boen's assessment that Annis could not stay on task or concentrate. *See Dixon*, 270 F.3d at 1176 ("In making her decision, an ALJ must articulate, at some minimum level, her analysis of the evidence." (citation omitted)).

Ultimately, whether a claimant is able to work is an issue reserved to the ALJ. 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). And where, as here, the ALJ rejects the opinion of a medical source that the claimant is unable to work because the opinion is unsupported or is contradicted by evidence of record, the Court will not disturb that finding. *Long v. Comm'r Soc. Sec.*, NO. 2:15-CV-408-JEM, 2017 WL 1161012, at *3 (N.D. Ind. Mar. 28, 2017) (quoting SSR 96-5p, 1996 WL 374183, at *3, 5).

### C. Credibility Assessment

Annis argues that the ALJ erred in discrediting her symptom testimony and the testimony of Mr. O'Brien because: (1) the ALJ improperly considered the lack of supporting medical evidence in discounting their testimonies regarding the severity of Annis's seizures; and (2) the ALJ did not consider Annis's inability to afford treatment as an explanation as to the lack of medical evidence of seizure activity in the record.

An ALJ's credibility determination is entitled to special deference because the ALJ is in the best position to evaluate the credibility of a witness. *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *Nelson v. Apfel*, 131 F.3d 1228, 1237-38 (7th Cir. 1997). If an ALJ's determination is grounded in the record and she articulates her analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), her determination will be upheld

unless it is "patently wrong," *Powers*, 207 F.3d at 435; *see Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness"); *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1995) ("[Because] the ALJ is in the best position to observe witnesses, [courts] usually do not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong." (citations omitted)).

Here, Annis testified that her seizures prevented her from working (AR 61), and Mr. O'Brien testified that Annis's seizures were violent, that she had about a "half dozen" seizures in 2007, and that she had not had a seizure since about 2010 (AR 62). Evidence of record shows that Annis first went to the emergency room for seizure activity on May 17, 2007. (AR 431). However, the attending physician opined that Annis did not exhibit any seizure activity, and a CT scan of the head was negative. (AR 431-32).

Annis did not seek treatment for a seizure again until she went to the emergency room on May 14, 2010. (AR 26, 431-45, 503-16). A CT scan showed some abnormality but electroencephalogram ("EEG") results were within normal limits and did not show any epileptogenic activity. (AR 504-05). An MRI was interpreted as showing some evidence of small vessel disease but was otherwise unremarkable.[5] (AR 503). Physical and neurological exams by Dr. Shah were also unremarkable. (AR 516-23). On June 16, 2010, Annis reported that she had not had a seizure since May 14, 2010. (AR 518).

On November 12, 2011, Annis went to the emergency room for seizure-like shaking, which, Mr. O'Brien reported, other doctors had previously opined was not a seizure. (AR 529).

---

[5] The ALJ explained that Dr. Bhupendra Shah's interpretation of the MRI, finding that it was not remarkable, was more credible because he is a neurologist with specialization in interpreting these findings. (AR 27-28).

Mark Dickmeyer, M.D., diagnosed Annis with a "pseudo-seizure," and alcohol intoxication (Annis's blood alcohol level was 0.18), but allowed her to walk home once she was sober. (AR 531). Annis's seizure-like activity (shaking of the arms) was easily controlled with a "sternal rub or simply holding her arms . . . ." (AR 529). Notably, Annis was never prescribed treatment for seizure activity during her three hospitalizations from May 2007 to November 2011, although she did seek and obtain treatment for other issues. (*See* AR 26-27).

Annis claims that the ALJ's credibility assessments are flawed in that the ALJ may not discount testimony solely because it is "unsupported by and inconsistent with medical evidence of record." (DE 19 at 13). Annis is correct that "an ALJ may not discredit testimony of pain solely because there is no objective medical evidence to support it." *Myles*, 582 F.3d at 677 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). However, "[t]he administrative law judge is not required or indeed permitted to accept medical evidence if it is refuted by other evidence—*which need not itself be medical in nature* . . . ." *Simila*, 573 F.3d at 515 (citation and internal quotation marks omitted). Here, the ALJ discredited Annis's and Mr. O'Brien's testimony regarding the limitations caused by Annis's seizures, because of "[Annis's] limited treatment and lack of abnormalities upon physical examination, CT scans of the head, and EEG evaluation." (AR 27). Thus, the ALJ's reasoned, at least in part, that evidence of record contradicted Annis's and Mr. O'Brien's testimonies.

Furthermore, although Annis claimed that she was having a seizure in the emergency room on May 17, 2007, the attending physician did not find any seizure activity. Similarly, Mr. O'Brien reported during the November 12, 2011, emergency room visit that doctors did not agree with him that Annis's seizure-like activity was actually a seizure. During that visit, Annis was not diagnosed with a seizure; rather, she was diagnosed with a "pseudo-seizure." Moreover,

17

reports from these emergency room visits indicate that Annis's symptoms were easily controlled. The ALJ discussed all of this evidence in support of her conclusion that Annis's "seizure activity was [not] so limiting that she was unable to work and was disabled." (AR 27). Therefore, the ALJ's conclusion that Annis's and Mr. O'Brien's testimonies were not credible is supported by substantial evidence of record, and will not be disturbed. *See Carradine*, 360 F.3d at 754.

Finally, Annis argues that the ALJ failed to consider her inability to afford treatment in assessing her credibility. This argument lacks merit. In discussing Annis's lack of treatment, the ALJ noted that despite her three trips to the emergency room for seizures, Annis was never prescribed any sort of treatment for seizures, indicating that her seizures were not as severe as she alleged. In other words, the primary issue with Annis's lack of treatment was not that she apparently failed to seek treatment; rather, it was that no medical source of record deemed Annis's seizure activity severe enough to warrant treatment. Furthermore, Annis sought treatment at least four times between May 17, 2007, and May 14, 2010, for issues unrelated to seizures, suggesting that she was able to obtain medical treatment. (AR 26, 523-30). Although Annis contends that she suffered from more frequent and more severe seizures than the record shows, the fact that the record contains little medical evidence of Annis's alleged seizures during the relevant period highlights her failure to satisfy her "burden of supplying adequate records and evidence to prove [her] claim of disability." *Scheck*, 357 F.3d at 702 (citation omitted); *Bowen*, 482 U.S. at 146 n.5.

Therefore, the ALJ's credibility assessment of Annis's testimony and Mr. O'Brien's testimony was not patently wrong as to require a remand. *See Powers*, 207 F.3d at 435; *Diaz*, 55 F.3d at 306 n.2; *Wilder*, 64 F.3d at 337.

## V.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.  The Clerk is directed to enter a judgment in favor of the Commissioner and against Annis.

SO ORDERED.

Entered this 31st day of July 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge